**R. D. EVANS, Appellant,**

v.

**Harold R. SWENSON, Warden, Appellee.**

**No. 71–1527.**

United States Court of Appeals,
Eighth Circuit.

Feb. 10, 1972.

R. D. Evans, pro se.

John C. Danforth, Atty. Gen., and Kenneth M. Romines, Asst. Atty. Gen., Jefferson City, Mo., on brief for appellee.

Before VAN OOSTERHOUT, Senior Circuit Judge, STEPHENSON, Circuit Judge, and REGISTER, Senior District Judge.

REGISTER, Senior District Judge.

This is an appeal from an order of the United States District Court for the Eastern District of Missouri (The Honorable William H. Webster), 332 F.Supp. 360, denying petitioner's petition for a writ of habeas corpus filed pursuant to 28 U.S.C., Section 2254. Petitioner was granted a certificate of probable cause, and the case is thus before us for review.

Appellant was found guilty of murder in the first degree by a jury, in the St. Louis Circuit Court of the State of Missouri; was sentenced to life imprisonment on January 20, 1967, and is now and has been since that time a prisoner in the Missouri State Penitentiary in ex-

ecution of his sentence. On direct appeal the Missouri Supreme Court affirmed the conviction (State v. Evans, 439 S.W.2d 170 (1969) ). Thereafter appellant filed a motion to set aside the judgment and conviction with the Circuit Court of the City of St. Louis. Appellant appealed the trial court's order denying such relief, and the order was affirmed by the Missouri Supreme Court (Evans v. State, 465 S.W.2d 500 (Mo., 1971) ).

In his petition for writ of habeas corpus appellant contends (1) that his conviction and sentence were imposed in violation of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States, in that he was deprived of counsel during in-custody interrogation, and (2) that his conviction and sentence were imposed in violation of the Fifth Amendment and the Due Process Clause of the Fourteenth Amendment in that he was compelled to be a witness against himself by the admission into evidence of involuntary statements made by him while in custody.

Basically and in essence, appellant contends that, prior to his making certain oral statements to Officer Meyers, and prior to his making certain oral and written statements thereafter to other officers and individuals (which statements were admitted over objection in evidence during his trial), he was not given warning as to his constitutional rights as required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L. Ed.2d 694 (1966). With reference to both of these contentions it is conceded that appellant has exhausted his remedies in the state courts of Missouri. In State v. Evans, 439 S.W.2d 170, the Supreme Court of Missouri affirmed the trial court's judgment on the ground that in order to invoke a specific Miranda-required warning against a confession or its equivalent, under the procedural requirements of the State of Missouri, a specific objection must be made; that this was not done, and therefore the point was not preserved for review.

However, therein, by dicta, the court expressed its opinion that the warnings given to appellant, who was then under custodial interrogation, did not meet the requirements of *Miranda*.

The essential facts in this case, which have been reliably found by the State trial court, establish the following: In the early morning of May 15, 1968, there was a fire in the building designated 2820 Montgomery Rear, in the City of St. Louis, Missouri, as a result of which Janet Bowers died from burns and smoke inhalation. Janet Bowers was the child of the Petitioner and Ernestine Bowers, and had been born out of wedlock on November 26, 1964. The described building was, at the time involved, the home of Charles and Acymai Morgan and their nine children, and of Ernestine Bowers and her two children. The building consisted of three bedrooms on the ground floor and a kitchen and toilet in the basement.

On the evening of May 14, 1968, Charles and Acymai Morgan had a party at their home. Several people, including appellant, attended this party at which there was eating, and the drinking of beer and highballs. At approximately midnight there was an argument, and appellant was requested to and did leave. At about 3:30 a. m., on May 15, 1968, Charles Morgan left the building to walk a friend home, and upon his return checked the house to be sure the lights and gas were off and the children sleeping and covered, and that the door was locked. Charles Morgan then went to bed, listened to the radio, and ten or fifteen minutes later:

" . . . heard a glass break, one of the window panes broke, it was shattering, and I heard a knock and I jumped out of bed and by the time I had taken a couple of steps, this noise coming from the rear, it was this big noise, and I looked that way when I heard this roar, the big noise and I saw fire coming all the way through the house."

Pursuant to orders, Officer Meyers drove his police car to the scene, and

there assisted Charles Morgan with some of the children. At that time Charles Morgan told Meyers that R. D. Evans had started the fire, and described Evans, and Officer Meyers began looking for Evans. Meyers returned to his car and soon saw Evans get out of a cab near the scene of the fire and start walking toward his car. Officer Meyers approached Evans, got his name and address, and then he and Evans got into a police cruiser being operated by officer Bommarito, and in which the body of Janet Bowers had previously been placed. Evans identified the body as being the child of himself and Ernestine Bowers. They remained in the cruiser while Bommarito took the body, in the cruiser, to the morgue.

Evans and Meyers remained alone in the emergency room of the hospital, awaiting another cruiser to take them to the police station. During this time Evans was sitting and, part of the time, crying. Meyers had previously informed appellant that Charles Morgan had said that he, appellant, had started the fire, which had been denied by appellant. After a few more minutes appellant inquired when Morgan had given this information to Meyers, and was told he did so at the scene of the fire. Appellant continued to sit for a few more minutes, and cry, and according to Meyers' testimony:

"and then he looked up and he said,

Officer, I would like to tell you something."

Then followed the critical conversation, including the warnings to appellant by Meyers, and the statements by appellant, hereinafter in detail stated and discussed.

A police sergeant then arrived with the cruiser and Evans was taken to the police station and a short time later made a detailed confession to the sergeant and another officer, and in effect repeated such confession in the presence of others, including Ernestine Bowers. It is conceded that the full *Miranda* warnings were not given immediately prior to the confessions made at the station.

The dispositive issue before us is whether the out-of-court statements received in evidence at appellant's trial were inadmissible as having been obtained in violation of his constitutional rights. This case was tried in October, 1966—subsequent to *Miranda*, supra (June, 1966). We are satisfied that the interrogation here invoved was an "in-custody interrogation" within the purview of *Miranda*, and the standard or test to be applied in evaluating the evidence is that pronounced therein by the Supreme Court. In this regard, appellant contends that the United States District Court, in the habeas corpus proceedings, should have deferred to the dicta found in State v. Evans, supra, to the effect that the warnings given by Meyers did not meet the requirements of *Miranda*. However, the Supreme Court of the United States, in Townsend v. Sain, 372 U.S. 293, at page 318, 83 S.Ct. 745, at page 760, 9 L.Ed.2d 770, stated:

"Although the district judge may, where the state court has reliably found the relevant facts, defer to the state court's findings of fact, he may not defer to its findings of law. It is the district judge's duty to apply the applicable federal law to the state court fact findings independently. The state conclusions of law may not be given binding weight on habeas. That was settled in Brown v. Allen, *supra*, 344 U.S. at 506, [73 S.Ct. at 445] (opinion of Mr. Justice Frankfurter)." (Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469).

Herein Judge Webster applied the applicable federal law, determined that the warnings given appellant by Meyers satisfied the requirements of *Miranda*, that appellant's subsequent incriminating statements were voluntary and admissible, and denied the petition for writ of habeas corpus. We affirm.

In *Miranda* the Supreme Court held that an individual who is taken into cus-

tody or otherwise deprived of his freedom by the authorities, and is subjected to questioning,

".  .  . must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. Opportunity to exercise these rights must be afforded to him throughout the interrogation. After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement. But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him." 384 U.S. p. 479, 86 S.Ct. p. 1630.

■ In considering the issue before us, we should bear in mind that ".  . the words of *Miranda* do not constitute a ritualistic formula which must be repeated without variation in order to be effective. Words which convey the substance of the warning along with the required information are sufficient." United States v. Vanterpool, 394 F.2d 697, at 698–699 (2 Cir. 1968); Camacho v. United States 407 F.2d 39 (9 Cir. 1969); Sweeney v. United States, 408 F.2d 121 (9th Cir. 1969); Craft v. United States, 403 F.2d 360 (9 Cir. 1968). In Tucker v. United States, 375 F.2d 363, at page 369 (8 Cir. 1967), cert. den. 389 U.S. 888, 88 S.Ct. 128, 19 L.Ed.2d 189, this Court said:

"Although it cannot be gainsaid that the guidelines laid down in *Miranda* must be given meaningful application, the Supreme Court did not prescribe an exact format or postulate the precise language that must be used in advising a suspect of his constitutional right to remain silent. * * * In resolving the question in light of the *Miranda* standards, the substance and not the form of the warnings should be of primary importance."

It is also important to consider the precise factual context in which Meyers' warnings and appellant's statements were made.

■ After Meyers informed appellant of the accusation of Charles Morgan, and after appellant's inquiry concerning the same and Meyers' reply, appellant said: "Officer, I would like to tell you something." It is obvious that such statement was in effect a prelude to statements which he intended to then voluntarily make with reference to the fire and Morgan's accusations. However, appellant was interrupted by Meyers, before he could proceed with the statements he was patently about to volunteer, by the response: "Well, I want to tell you something before you say anything at all to me." Thereupon appellant was clearly and adequately advised of his right to remain silent, by the Officer's statement that ".  .  . you don't have to say anything and you don't have to make any statement"; he was then advised that "any statement you do make could be used against you"—following which Meyers inquired whether appellant understood those rights, and received an affirmative answer. Meyers then informed appellant ".  .  . you have a right to make a phone call and you also have a right to an attorney" —to which information appellant stated "I know that." Meyers continued: ".  .  . if you don't have an attorney or can't afford one, I'll get one for you," following which Meyers asked appellant ".  .  . do you understand all of this?", and received an affirmative reply. In our view, by such information the appellant was clearly advised and informed in substance that he had a right to have an attorney at that time, prior to his making any statements or being interrogated by an officer, and during such interrogation, and, further, that if he could not afford an attorney one would be furnished for him prior to his making any

statements and before continuing the interview, if he so desired. The reference to the right to counsel followed immediately on the warning as to the right to remain silent and the risk or consequences of not doing so—and followed the expressed desire of appellant to Meyers "to tell you something", and Meyers' cautionary and interrupting warning that ". . . I want to tell you something *before you say anything at all to me.*" Clearly the reference to the right to counsel related to the immediately anticipated statements of appellant and any interrogation by Meyers relating thereto. As a part of the warning, Meyers informed appellant, that "You have a right to make a phone call." This immediately preceded the information as to his right to an attorney and clearly related to the present. Twice during the warning appellant was asked if he understood his rights, and he replied in the affirmative.

After completing the warning statements, Meyers said to appellant, ". . I just want you to understand you have certain rights and to see that they are protected." Appellant replied, "I understand that very well."

While the statements made to Meyers were "in-custody" within the purview of *Miranda,* it should be noted that the record is devoid of any of the objectional foundation facts which existed in and gave rise to the opinion in *Miranda.* There is a complete absence of any coercive (or even aggressive or improper) police conduct, interrogation or atmosphere—a complete absence of any facts or circumstances constituting what has been called "typical in-custody police interrogation." Appellant's statements were initiated by himself, and the time, place and circumstances under which they were made clearly establish that they were voluntarily made because of an intense sense of guilt and remorse for causing the death of his child.

■ We have carefully reviewed the entire record, and are satisfied that the warnings complied with the *Miranda* requirements, that appellant understood the same, that the statements were freely and voluntarily made, and that he knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel present at the interrogation. The Government's burden is clearly fulfilled by the totality of the relevant facts and circumstances in the record. See: United States v. Montos, 421 F.2d 215, 224 (5 Cir. 1970), cert. denied, 397 U.S. 1022, 90 S.Ct. 1262, 25 L.Ed.2d 532; and Hughes v. Swenson, 452 F.2d 866 (8 Cir. 12–16–71).

■ Appellant also contends that the out-of-court statements given to officers after his arrival at the station, and shortly thereafter in effect repeated in the presence of other individuals, including Ernestine Bowers, were inadmissible because the full *Miranda* warnings were not given to him immediately prior to the questioning session at which they were made.

Later that same morning, and within a short time after appellant arrived at the station with Meyers, in response to questions by two other officers, appellant in effect repeated (but in somewhat more detail) the statements previously made to Meyers, and again repeated such statements to those officers and Charles and Acymai Morgan, Ernestine Bowers, and other friends. Prior to this questioning session appellant was advised of certain constitutional rights, but not as adequately as required by *Miranda.* However, the record discloses that such statements were clearly, freely and voluntarily made, were made within a short time after appellant had been given adequate warnings by Meyers, and in substance were the same as his previous statements. This Court has held that the "Miranda" warning need not be repeated in full each time the interrogation process is resumed after an interruption. Tucker v. United States, 375 F.2d 363, supra; Miller v. United States, 396 F.2d 492 (8 Cir. 1968), cert. den. 393 U.S.

1031, 89 S.Ct. 643, 21 L.Ed.2d 574. In the latter case, this Court stated (p. 496):

"It is difficult to lay down a rule of general application, and we will not attempt to do so here. In each case, the ultimate question is: Did the defendant, with a full knowledge of his legal rights, knowingly and intentionally relinquish them?"

We are satisfied in this case that Evans did. See, also, United States v. Osterburg, 423 F.2d 704 (9 Cir. 1970), cert. den. 399 U.S. 914, 90 S.Ct. 2166, 26 L. Ed.2d 571.

We are convinced that the admission into evidence of the challenged statements of appellant at his trial did not constitute a violation of his constitutional rights.

Affirmed.

Feinberg, Circuit Judge, concurred in result and filed opinion.