**David L. BUTZIN, Appellant,**

v.

**Frank W. WOOD, Warden of Minnesota Correctional Facility, Oak Park Heights and the State of Minnesota, Appellees.**

**No. 88–5412.**

United States Court of Appeals, Eighth Circuit.

Submitted May 8, 1989.

Decided Sept. 26, 1989.

the Bankruptcy Code and state exemption law. We are at a loss to explain why the district court did not use the same approach in this case.

**10.** Our disposition of this case makes it unnecessary to decide whether N.D.Cent.Code §§ 28–22–03 and 28–22–03.1 create an exemption that covers postpetition rents during the redemption period. The redemption period did not begin

Paul Engh, Minneapolis, Minn., for appellant.

Paul R. Kempainen, St. Paul, Minn., for appellees.

Before LAY, Chief Judge, HENLEY, Senior Circuit Judge, and BEAM, Circuit Judge.

HENLEY, Senior Circuit Judge.

David L. Butzin appeals from the district court's [1] denial of his petition for a writ of habeas corpus. Butzin's petition chal-

until after petition and conversion. We also need not address the trustee's argument that the claimed exemption may not be allowed because the debtors had no equity in the underlying farmland at the time of petition.

**1.** The Honorable Robert G. Renner, United States District Judge, District of Minnesota.

lenged his two-count state conviction of the second degree murders of his pregnant wife, Melody, and eighteen-month-old son, Alex. In this appeal, Butzin contends that he was given inadequate *Miranda* warnings by the police, inasmuch as they did not expressly inform him that he had a right to have counsel present during interrogation. We affirm.

The facts of this case are set forth in the Minnesota Court of Appeals opinion affirming Butzin's convictions, *State v. Butzin*, 404 N.W.2d 819 (Minn.App.1987), and will not be fully recounted here. The bodies of Melody and Alex were found in Cat Creek in Wadena County, Minnesota. Initially the sheriff believed their deaths were accidental. A few days later, however, an insurance agent informed the sheriff's office that Butzin had insured Melody's life for $100,000.00 the day before she died. It was ultimately discovered that Melody's life was insured for a total of $239,000.00, and Alex's life for $6,000.00. Butzin was the primary beneficiary of all the insurance policies, and most of the coverage on Melody was purchased not long before she died.

The sheriff's office contacted Butzin's father-in-law and asked him to tell Butzin that the sheriff wanted to question him at about 1:00 o'clock on August 26, 1985, at the Wadena County Law Enforcement Center. Butzin showed up as requested, and was questioned about the deaths of his wife and son. He was not arrested initially, but was given the following warning: "David, you have the right to remain silent. Anything you say can be used against you in court. You have the right to an attorney. If you cannot afford an attorney, one will be appointed for you at no cost." Butzin then proceeded to answer the questions put to him by Chief Deputy Sheriff Steven Young. Also present to assist with the questioning was Gary Nelson, a retired Minnesota Bureau of Criminal Apprehension Agent. The questioning took place in Deputy Young's office, and proceeded for approximately one hour. During this time

Butzin stated that he did not know when Melody and Alex had died.

He was then interviewed for twenty-five minutes to an hour by Richard Polipnick, a private investigator the County had hired to assist in the investigation.[2] Nelson and Young then returned for approximately fifteen to twenty minutes and continued their questioning, then left. Polipnick came back into the office, where he found appellant with his head in his hands, slumped over, with tears in his eyes. Polipnick sat down in front of Butzin, placed his hands on Butzin's shoulders and said, "David, you're in a world of hurt, aren't you"? Butzin nodded his head yes. Polipnick then said, "Why don't you tell me what happened out there at Cat Creek, David"? Butzin answered, "I lied, I was there." He claimed that Melody and Alex had fallen into the water and that he had panicked and run away. Polipnick left the office and informed Young and Nelson of Butzin's statements. Young and Nelson reentered the office. Butzin told them that his statement to Polipnick was not entirely true, because he had bumped Melody into the creek and then watched Melody and Alex float down the stream. He then gave a written statement claiming that Melody and Alex fell into the stream after he slipped and ran into them; that he then went back up to the road and "just watched them go down the river"; and that he then unsuccessfully tried to save them. After signing the statement, Butzin was arrested.

He spent the night in jail, and after breakfast the next morning asked to speak with Deputy Young. He told Young that he had "not been totally honest the day before." Young asked Butzin if he remembered the rights that had been read to him the day before, and he replied that he did. Young then asked Butzin what it was that he had not been honest about. Butzin replied that he had not accidentally bumped Melody, but that he had pushed her into

2. The record reveals that Polipnick may have given Butzin a *Miranda* warning, but the substance of that warning is not part of the record on appeal. The State apparently places no re-

liance on Polipnick's warning; neither party makes any reference to it in the argument portions of the briefs.

the creek because he wanted her to die and that he knew she could not swim.

Butzin challenges the admissibility of his statements on the ground that he was not expressly advised of his right to have counsel present during interrogation. *See Miranda v. Arizona*, 384 U.S. 436, 471, 86 S.Ct. 1602, 1626, 16 L.Ed.2d 694 (1966). However, *Miranda* warnings are required only when a suspect is in custody and is about to be subjected to interrogation. *Rhode Island v. Innis*, 446 U.S. 291, 300, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980). We do not believe that Butzin's ultimate confession, although he was unquestionably in custody at the time he made it, was the product of interrogation. The Minnesota Court of Appeals' opinion indicates in its statement of facts that Butzin initiated the conversation with Deputy Young. 404 N.W.2d at 823. The State reasserts in its appellate brief that Butzin requested to see Deputy Young, and Butzin does not contest this on appeal, although he apparently did contest it at trial. *Id.* The state court's factual determinations are entitled to a presumption of correctness in a habeas proceeding, 28 U.S.C. § 2254(d); *Sumner v. Mata*, 449 U.S. 539, 545–47, 101 S.Ct. 764, 768–69, 66 L.Ed.2d 722 (1981), and we presume that Butzin initiated the conversation with Deputy Young.

" 'Interrogation,' as conceptualized in the *Miranda* opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself." *Innis*, 446 U.S. at 300, 100 S.Ct. at 1689. The Supreme Court in *Miranda* expressly stated that "[v]olunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." 384 U.S. at 478, 86 S.Ct. at 1630. Accordingly, we have held that statements volunteered by a suspect during the course of routine arrest procedures were not the products of interrogation, *United States v. Webster*, 769 F.2d 487, 491–92 (8th Cir. 1985), and that custodial statements made on the suspect's own initiative are not subject to the safeguards of *Miranda*, *Stumes v. Solem*, 752 F.2d 317, 322–23 (8th Cir. 1985). "*Miranda* does not protect an ac-

cused 'from a spontaneous admission made under circumstances not induced by the investigating officers or during a conversation not initiated by the officers.' " *United States v. Rhodes*, 779 F.2d 1019, 1032 (4th Cir.1985), *cert. denied*, 476 U.S. 1182, 106 S.Ct. 2916, 91 L.Ed.2d 545 (1986) (quoting *United States v. Grant*, 549 F.2d 942, 946 (4th Cir.), *cert. denied*, 432 U.S. 908, 97 S.Ct. 2955, 53 L.Ed.2d 1081, *vacated on other grounds*, 435 U.S. 912, 98 S.Ct. 1463, 55 L.Ed.2d 502 (1978)); *accord*, *United States v. Foskey*, 636 F.2d 517, 521–22 (D.C.Cir.1980) (post-arrest statements, spontaneously volunteered, were not made in the course of interrogation). Nor did Deputy Young's request for clarification of Butzin's remark that he had not been totally honest trigger the need for warnings. An officer's attempt to seek clarification of an ambiguous statement is not generally construed as interrogation for *Miranda* purposes if the question does not "enhance the defendant's guilt or raise the offense to a higher degree...." W.R. LaFave & J.H. Israel, 1 *Criminal Procedure* § 6.7, at 514 (1984); *see Rhodes*, 779 F.2d at 1032.

Moreover, Butzin's confession was not in response to the interrogation of the day before. It was he who asked to renew his contact with Deputy Young after a night's sleep and breakfast in the morning. He had already made a statement, but was at that point not under great pressure from the authorities to say any more. He had been warned the day before of his right to remain silent, and that his statements could be used against him. He stated that he remembered these warnings. Apparently for his own reasons he wanted to give an honest account of the events leading to the deaths of his wife and child. *Cf. Oregon v. Elstad*, 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985) (*passim*) (prior unwarned but voluntary statement does not render inadmissible all subsequent voluntary statements). Thus, we conclude that the morning confession was not the product of interrogation, and was admissible regardless of whether the *Miranda* warnings were adequate.

We turn now to the prior statements made the day before. It is questioned whether these statements, clearly the product of interrogation, were made in a custodial setting. We do not reach that question, however, as we find that any error in the admission of the statements would be harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967); *Howard v. Pung*, 862 F.2d 1348, 1351–52 (8th Cir.1988), *cert. denied*, — U.S. —, 109 S.Ct. 3247, 106 L.Ed.2d 593 (1989). Butzin concedes in his appellate brief that his first confession was a "relatively innocuous, cryptic disclosure.... Butzin makes it sound accidental.... His first confession was not the stuff of premeditated murder, rather, arguably it's [a] manslaughter type confession and it was certainly not what convicted him. The second statement ... provided the proof of intent." We agree with this characterization. Moreover, Butzin voluntarily made two other inculpatory statements that were introduced at trial and which he does not challenge on appeal. In the first of these statements, Butzin told Melody's father that he was responsible for Melody going into the water. The second admission came as he was being transported to court, when he inquired of Deputy Young about the strength of the case against him. Young told Butzin that he believed the case was solid, but that the jury would have to decide. Butzin then stated, "I know that I am guilty and that I have done wrong, but I have to go to court to beat it. It's the best chance I have." Finally, the jury heard the evidence of the insurance coverage Butzin had taken out on his wife shortly before her death. In light of the overwhelming evidence of Butzin's guilt, *Howard*, 862 F.2d at 1351–52, we conclude that the admission of the first statement, if error, was harmless beyond a reasonable doubt.

Finally, we reject Butzin's claim that his confessions were involuntary. Our review of the record reveals no threats, promises, violence, or other improper conduct on the part of the police in interrogating Butzin.

*Rachlin v. United States*, 723 F.2d 1373, 1377 (8th Cir.1983).

For the foregoing reasons, the judgment of the district court is affirmed.

BEAM, Circuit Judge, concurring.

I fully concur in the affirming opinion in this case. I write separately to advert to Chief Judge Lay's reliance on *Duckworth v. Eagan*, — U.S. —, 109 S.Ct. 2875, 106 L.Ed.2d 166 (1989).

Although on its facts *Duckworth* is not *Butzin*, it seems fair to say that in principle *Duckworth* did reaffirm *Miranda*. In so doing, however, the Chief Justice, quoting *California v. Prysock*, 453 U.S. 355, 101 S.Ct. 2806, 69 L.Ed.2d 696 (1981), observed that "the 'rigidity' of *Miranda* [does not] exten[d] to the precise formulation of the warnings given a criminal defendant," and that "no talismanic incantation [is] required to satisfy its strictures." *Duckworth*, 109 S.Ct. at 2879. Further "[r]eviewing courts ... need not examine *Miranda* warnings as if construing a will or defining the terms of an easement." *Id.* at 2880. In applying this admonition, the Supreme Court, reversing the Seventh Circuit, found acceptable a warning that informed the defendant that "[a lawyer] would be appointed 'if and when you go to court.'" *Id.* (quoting *Eagan v. Duckworth*, 843 F.2d 1554, 1556 (7th Cir.1988) (emphasis omitted)). In my view, this was a far greater departure from the specific pronouncements set forth in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) than the warning given Butzin.

LAY, Chief Judge, dissenting.

I respectfully dissent.

The basic fallacy of the majority opinion relates to the finding that certain incriminating statements given by the defendant were harmless error. On this basis the court justifies the failure to decide the central issue raised on this appeal, to-wit: whether or not the defendant was given a proper warning under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The majority justifies

not focusing upon this critical issue by finding that a statement made on the second day of the defendant's incarceration was a voluntary statement and more prejudicial than the first. On this basis the majority reasons that the admission of any statement given in violation of the *Miranda* warning on the first day would not be prejudicial.

I find fault with this analysis for several reasons.

My basic concern is the attempt by the majority to apply a harmless error rule to the critical issue on appeal because of the subsequent alleged voluntary statement. Although I have some difficulty in viewing the "voluntariness" of the confession made to the police officers the second day, for purposes here, I will assume that it was voluntary and the statements made were incriminating in nature.[1] The majority relies upon *Oregon v. Elstad*, 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985), which held that a defendant who receives a *Miranda* warning after a warningless statement can, under the circumstances existing, waive his fifth amendment rights and make a second confession valid. The rationale of the court as espoused by Justice O'Connor is that the first statement, although in technical violation of the *Miranda* warning, was not relevant since it constituted only "presumptive coercion" and the fifth amendment rights were waived by providing a subsequent warning before the defendant gave his second statement. *Elstad*, 470 U.S. at 306–07, 105 S.Ct. at 1291–92. There is a clear distinction, however, between the *Elstad* holding and the facts surrounding Butzin's incriminating statements. In the present case Butzin was *never* given a proper *Miranda* warning at any time and therefore could not be held to have waived his fifth amendment rights. Butzin's alleged voluntary statement made on the second day while in custody cannot be completely separated

from his prior illegal custodial interrogation made on the prior day. No case has ever held as much and for good reason.

Here the initial warning given by the police officer at the time of Butzin's initial interrogation failed to provide Butzin with the information that he had a right to consult with a lawyer prior to further questioning and to have the lawyer with him during the interrogation. This right is clearly pronounced by the *Miranda* decision, 384 U.S. at 471, 86 S.Ct. at 1626, and there is no decision of the Supreme Court that has ever retrenched from this requirement. In the present case the defendant was told:

> David you have the right to remain silent. Anything you say can be used against you in court. You have the right to an attorney. If you cannot afford an attorney, one will be appointed for you at no cost. Do you understand these rights?

The critical issue in this case, which the majority chooses to avoid, is whether or not this warning, given on the day before his voluntary statement, was in fact an adequate warning. The issue that was argued vigorously by both sides in their briefs and orally before this court was whether or not this warning conveyed sufficient information to the defendant so that he could fully understand that he had a right to consult with a lawyer before he was interrogated and to have the lawyer with him during the interrogation. The parties have a right to have this issue passed upon.

The recent case of *California v. Prysock*, 453 U.S. 355, 101 S.Ct. 2806, 69 L.Ed.2d 696 (1981), reaffirms the fundamental right in *Miranda* that for a warning to be complete for the purposes of *Miranda* it must clearly inform the defendant that he has a right to consult with a lawyer and to have the lawyer with him

---

1. The majority holds that the statements made the second day, following Butzin's custodial arrest, were not "interrogation." I seriously question this. Although Butzin requested to see the deputy and volunteered that he lied, what followed was clearly an interrogation. Once again

he failed to receive a proper *Miranda* warning and the questioning which followed clearly sought to elicit incriminating answers. *See Rhode Island v. Innis*, 446 U.S. 291, 300–01, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980).

during the interrogation.[2] Although *Prysock* indicates that no talismanic incantation is required to satisfy the requirements of *Miranda, Prysock*, 453 U.S. at 359, 101 S.Ct. at 2809, it does not in any way erode the necessity for a defendant to be clearly informed of his right to consult with a lawyer before and during his interrogation. The cases are legion supporting this position. *See, e.g., United States v. Noti*, 731 F.2d 610 (9th Cir.1984) (holding a warning inadequate where the investigating officer failed to inform a defendant that he had a right to counsel during questioning as well as before); *Windsor v. United States*, 389 F.2d 530 (5th Cir.1968) (holding a warning defective that merely told a defendant that he could "speak with an attorney or anyone else before saying anything at all"). This court has previously reaffirmed such a position in *South Dakota v. Long*, 465 F.2d 65 (8th Cir.1972), *cert. denied*, 409 U.S. 1130, 93 S.Ct. 951, 35 L.Ed.2d 263 (1973).[3]

In *Miranda* the Supreme Court made the following requirement clear: "[T]he need for counsel to protect the Fifth Amendment privilege comprehends not merely a right to consult with counsel prior to questioning, but also to have counsel present during any questioning if the defendant so desires." *Miranda*, 384 U.S. at 470, 86 S.Ct. at 1626. The court then stated: "[W]e hold that an individual held for interrogation must be clearly informed that he

has the right to consult with a lawyer and to have the lawyer with him during interrogation under the system for protecting the privilege we delineate today." *Id.* at 471, 86 S.Ct. at 1626.

In a decision decided just this last term, the Supreme Court in *Duckworth v. Eagan*, —— U.S. ——, 109 S.Ct. 2875, 106 L.Ed.2d 166 (1989), reaffirms this principle. The court reaffirmed its earlier statements in *Prysock* that the accused has a right to be informed that he or she is entitled to have an attorney present at the time of police interrogation. In *Duckworth, after* the police had fully informed the accused of his *Miranda* rights[4] they added the controversial surplusage that they "could not provide respondent with a lawyer, but that one would be appointed 'if and when you go to court.'" *Duckworth*, 109 S.Ct. at 2880. In a 5-4 decision the Court stated that the added statement by the police did not taint the prior warning since *Miranda* did not require that attorneys be producible on call and that the surplusage merely echoed what Indiana law provided. *Id.* at 2880. Significant here, however, is that the Court pointed out that its holding in *Prysock* was that warnings that failed to "apprise the accused of his right to have an attorney present if he chose to answer questions" would be inadequate. *See id.* at 2880–81. The Court continued by saying that "[t]he warning in this case did not

---

**2.** As the court stated in *Prysock:*

> It is clear that the police in this case fully conveyed to respondent his rights as required by *Miranda*. He was told of his right to have a lawyer present prior to and during interrogation, and his right to have a lawyer appointed at no cost if he could not afford one. These warnings conveyed to respondent his right to have a lawyer appointed if he could not afford one prior to and during interrogation.

*Id.*, 453 U.S. at 361, 101 S.Ct. at 2810.

**3.** It is urged by the government that *Tasby v. United States*, 451 F.2d 394 (8th Cir.1971), *cert. denied*, 406 U.S. 922, 92 S.Ct. 1787, 32 L.Ed.2d 122 (1972), and *Evans v. Swenson*, 455 F.2d 291 (8th Cir.), *cert. denied*, 408 U.S. 929, 92 S.Ct. 2508, 33 L.Ed.2d 342 (1972), are contradictory to the *Long* case and that therefore our opinions are in a disarray. I will not attempt to go into the circumstances of *Tasby* and *Evans* since I think they are both distinguishable. However,

these cases cannot overrule the basic rule of *Miranda* and their interpretation must be read along with *Miranda*. Certainly any interpretation must be reconciled with the reaffirmation of the *Miranda* requirement that we set forth in *Long*. If our cases are inconsistent then there is all the more reason for this court at this time to reaffirm the *Miranda* requirement. Certainly this court cannot overrule a constitutional predicate of the Supreme Court of the United States. Even the government does not attempt to argue this position.

**4.** The *Miranda* warning the accused received in *Duckworth* included in pertinent part:

> [T]hat he had the right to speak to an attorney before and during questioning, that he had "this right to the advice and presence of a lawyer even if [he could] not afford to hire one," and that he had the "right to stop answering at any time until [he] talked to a lawyer."

*Duckworth*, 109 S.Ct. at 2880.

suffer from that defect." *Id.* at 2881. In the present case, the warnings clearly suffer from that defect in that the accused was not informed at *any time* of the right to have an attorney present if he chose to answer questions.

In the present case the majority opinion must implicitly assume that Butzin's rights were violated in the failure to properly give the warning the first day but that that error is somehow harmless beyond a reasonable doubt for the simple reason that the defendant, while in custody, came forward in a voluntary manner and made a more incriminating confession.[5] I respectfully submit that this analysis is totally unrealistic. If a proper warning had been given on the first day during what the majority assumes to have been a custodial interrogation we are left to speculate as to whether the defendant, then theoretically fully knowing that he had a right to consult with counsel before the interrogation and to have counsel with him during the interrogation, would have made any statement during the interrogation or would have come forth supposedly in a voluntary manner and made another incriminating statement the next day.

Curiously, the majority emphasizes the fact that Butzin did not confess to too much and relies upon the statement by defendant's counsel that the first interrogation was "not the stuff of premeditated murder, rather, arguably it's [a] manslaughter type confession and it was certainly not what convicted him. The second statement * * * provided the proof of intent." This approach totally misconceives and misunderstands the message of *Miranda*. Whether the statements are inculpatory or exculpatory, whether they incriminate a little bit or not at all is immaterial. *See Miranda*, 384 U.S. at 444, 86 S.Ct. at 1612. The very fact that the defendant admitted his presence at the scene of the crime, which he had denied before, was in itself, although intended to be exculpatory, in fact inculpatory. This is not the same situation as in *Elstad*. There, when the

defendant made his second statement he had received a full and proper *Miranda* warning and had waived his fifth amendment rights. Butzin was never informed properly of his fifth amendment rights and to urge that one can obviate the critical error of this case by later making a voluntary confession fails to appreciate that the two confessions cannot be isolated one from another. Here the defendant had made his confession the first day, was placed in custody, and was under arrest. The next morning, while still in custody, he came forward and made an additional statement. Assuming one could say that the second statement was voluntary, and for purposes of argument here I will assume this to be correct, it is not a separate and isolated instance from the fact that the defendant had previously made his incriminating statements the day before. *Cf. Westover v. United States*, 384 U.S. 436, 494, 86 S.Ct. 1602, 1638, 16 L.Ed.2d 694 (1966) (finding the defendant could not have knowingly and intelligently waived his fifth amendment rights where he received a warning after fourteen hours of a two day custodial interrogation because to the defendant, it was "a continuous period of questioning.") But more importantly, this reasoning denigrates the necessity of a defendant being told the important requisite of the *Miranda* warning, to-wit: that he was entitled to counsel before the interrogation, and at the time of the interrogation.

The Minnesota Court of Appeals faced this question and did not attempt to separate the two statements. *See State v. Butzin*, 404 N.W.2d 819, 824–26 (Minn.Ct.App. 1987). The majority, however, has done so and that is the basic fallacy of the decision.

The argument of the government, which the majority fails to discuss, is that the first day was not a custodial interrogation and that this case is in accord with *California v. Beheler*, 463 U.S. 1121, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983), and *Oregon v. Mathiason*, 429 U.S. 492, 97 S.Ct. 711, 50

---

**5.** The majority also cites two other incriminating statements given to third parties. However, not even the government argues that the

overall questioning by the police officers would be harmless error because of these other instances.

L.Ed.2d 714 (1977). These cases hold that there can be a noncustodial interrogation in which an incriminating statement or confession can be made, and that under such circumstances there is no violation of the fifth amendment by the police so obtaining the statement. *See Beheler,* 463 U.S. at 1125, 103 S.Ct. at 3520; *Mathiason,* 429 U.S. at 495, 97 S.Ct. at 714.

These arguments should be answered. I would find that there was a custodial interrogation at the commencement of Butzin's interrogation on the first day at the police station. If not at the commencement, certainly at some intermediate phase of the interrogation a custodial accusatorial interrogation took place. It is true that Butzin came to the police station of his own volition. At the time he came, however, he was clearly a suspect. Further, the police had prepared a series of 150 questions to present to him during his initial questioning. It was during this initial questioning that Butzin stated he did not know when his wife and child had died.

Subsequent to the first interrogation, which lasted approximately one hour, Polipnick, a private investigator for the county, arrived and questioned Butzin. Based upon the silent record we must assume he did not give any *Miranda* warning. In the interim the two officers once again set out to interrogate Butzin for another fifteen to twenty minutes, and then Polipnick came in and inquired of Butzin: "David, you're in a world of hurt, aren't you? Why don't you tell me what happened out there at Cat Creek, David?" Butzin replied: "I lied, I was there." Although this statement was incriminating, Butzin had not yet admitted his complicity in the crime itself. Polipnick left the office and once again the two deputies returned. Certainly at this stage, if not before, a custodial interrogation commenced. This interrogation led to a signed confession after which he was arrested and placed in jail.

I respectfully submit that for the majority to urge that it is unnecessary to address the issue of the adequacy of the *Miranda* warning, because Butzin's statement the next morning was voluntary and totally unrelated to the custodial questioning of the day before, is fundamental error. The case should be reversed and a writ issued conditioned on granting Butzin a new trial.