# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-2777
_____

United States of America

*Plaintiff - Appellee*

v.

Erik Becerra

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: October 18, 2019
Filed: May 7, 2020

_____

Before LOKEN, SHEPHERD, and STRAS, Circuit Judges.

_____

STRAS, Circuit Judge.

Erik Becerra was charged as a felon in possession of a firearm and ammunition. He thinks the district court should have let him testify that he intended to hand the gun over to his probation officer. Whether this so-called innocent-possessor defense is available has long been an open question. We now join a number of other courts in declining to recognize it. Because none of his other challenges have merit either, we affirm.

I.

Becerra's probation officer was worried. A seven-time felon, Becerra had left "rambling" voicemail messages for her that did not "make any sense." He also told a police officer who had arrested him for driving under the influence that he was "dirty." She suspected that he was back on methamphetamine.

Based on her concerns, she requested an "apprehension and detention order," which authorized Becerra's arrest. But before she could deliver it, he showed up at her office wearing a coat with an ominous-looking bulge in the front pocket. While he waited in the lobby, she called 9-1-1. The police officers who responded to the call decided to arrest him.

Becerra was cooperative with the officers and held nothing back. He told them that he had ammunition in his pocket and a gun in a red Dodge Avenger parked outside. He was telling the truth. They soon discovered .45-caliber ammunition in his pocket and a black semiautomatic handgun under the driver's seat of the car.

These discoveries led to two federal felon-in-possession charges, one for the gun and the other for the ammunition. *See* 18 U.S.C. §§ 922(g)(1), 924(a)(2). After a jury found him guilty of both counts, the district court[1] entered judgment and imposed an 80-month, within-Guidelines-range sentence.

Becerra has held nothing back on appeal either, raising an array of challenges to his convictions and sentence. His main focus is on the district court's evidentiary rulings, starting with what it let in: (1) the handgun and the ammunition, and (2) his incriminating statements. Then there is what it kept out: testimony explaining why

---

[1]The Honorable Susan Richard Nelson, United States District Judge for the District of Minnesota.

he possessed the handgun. The challenges to his sentence run the gamut from procedural to substantive.

## II.

We begin with Becerra's challenges to what came in during trial. In reviewing the district court's denial of his motion to suppress the physical evidence and his incriminating statements, the standard is clear error for any factual findings and de novo for conclusions of law. *United States v. Muhlenbruch*, 634 F.3d 987, 995 (8th Cir. 2011).

## A.

The first challenge is to the physical evidence used to convict Becerra: the handgun and the ammunition. His theory is that they were inadmissible as "fruit[s]" of an illegal arrest and detention. *Segura v. United States*, 468 U.S. 796, 804 (1984). Without a warrant, he says, the officers should never have been able to arrest him in the first place.

Even though a warrant is typically required for an arrest, there are exceptions. One is when there is probable cause to believe that an individual is committing a crime in the officer's presence. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001); *United States v. Robinson*, 414 U.S. 218, 235 (1973). Here, as long as there was a "substantial chance" that Becerra had a firearm on him, the officers could arrest him. *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018) (citation omitted) (explaining the probable-cause standard).

There was more than enough evidence for them to conclude that he did. Once they arrived, the first probation officer they saw appeared "extremely nervous." She told them that Becerra "more than likely ha[d] a gun on him." *See United States v. Wright*, 145 F.3d 972, 975 (8th Cir. 1998) (explaining that the statements of a reliable informant can be enough for probable cause). And the officers themselves

could see the large bulge in his front coat pocket. *See Illinois v. Gates*, 462 U.S. 213, 242 (1983).

Moreover, the officers were not entering the situation blind. The dispatcher shared the facts from the 9-1-1 call with them, including that Becerra had a lengthy criminal history and could have had drugs in his system. From their experience, these facts made it more likely that he had a gun, and the officers could reasonably conclude, based on these circumstances, that probable cause existed. At that point, warrant or not, they could arrest him.[2]

B.

Even if the officers could arrest him, they still failed to give *Miranda* warnings before he made two incriminating statements. *See Miranda v. Arizona*, 384 U.S. 436, 478–79 (1966) (discussing what warnings are required). While the officers handcuffed him, he announced that he had "something" in his car. One of the officers asked, "what's in your car?" to which he replied, "a gun." The same officer then asked whether he "had any weapons or anything illegal" on him, which prompted him to admit that "he had bullets in his pocket." The absence of *Miranda* warnings, according to Becerra, should have kept both statements out.

Generally speaking, statements made during a "custodial interrogation" are inadmissible unless a suspect has been given *Miranda* warnings first. *Id.* at 444. We have no doubt that Becerra was in custody when he made both statements. After all, the officers had just told him that he was under arrest and were placing him in handcuffs at the time. *See Orozco v. Texas*, 394 U.S. 324, 327 (1969).

The dispute is over whether the two questions that prompted these statements amounted to interrogation. The first one, "what's in your car?" did not. It was a

---

[2]The presence of probable cause eliminates the need for us to decide whether the undelivered apprehension-and-detention order would have independently justified the search.

"request for clarification" of Becerra's spontaneous statement that he had "something" in his car. *Butzin v. Wood*, 886 F.2d 1016, 1018 (8th Cir. 1989). The "something" could have been anything. So asking Becerra to clarify the ambiguity did not require *Miranda* warnings. *Id.*

To be sure, even follow-up questions can amount to "interrogation" if their point is to "enhance the defendant's guilt." *Id.* (quoting Wayne R. LaFave & Jerold H. Israel, 1 *Criminal Procedure* § 6.7, at 514 (1984)); *see also United States v. Chipps*, 410 F.3d 438, 445 (8th Cir. 2005). But at that moment, the officer had not "expand[ed] the scope" of Becerra's original statement by asking about something else. 2 Wayne R. LaFave et al., *Criminal Procedure* § 6.7(d), at 882 (4th ed.). Rather, "what's in your car?" was clearly designed to identify the "something" that Becerra had mentioned was there. *Cf. id* (explaining that an officer is free to ask, "did what?" in response to a defendant's statement that "I did it").

The second question is a different story. By asking about "weapons or anything illegal on his person," the officer expanded the scope of the exchange beyond the subject of Becerra's original statement with a question that was likely to "elicit an incriminating response." *Rhode Island v. Innis*, 446 U.S. 291, 302 (1980). At that point, clarification became interrogation. Even so, Becerra's answer, "a gun," was admissible for a different reason: the question fell under the public-safety exception. *See New York v. Quarles*, 467 U.S. 649, 655 (1984).

No *Miranda* warnings were required because "police officers [may] ask questions reasonably prompted by a concern for . . . public safety," even when the potential threat is to the officers themselves. *Id.* at 656; *see United States v. Liddell*, 517 F.3d 1007, 1009–10 (8th Cir. 2008). When they saw a bulge in Becerra's pocket, they were justifiably worried about what was in there. Because it could have been a gun or other weapon that would have posed a danger to themselves and others, they could ask about it without the formality of *Miranda* warnings. *See Liddell*, 517 F.3d at 1009–10 (explaining that questions like this one reduce the risk that officers will be "injured by the mishandling of unknown firearms or drug paraphernalia");

*see also id.* at 1010 (noting that the presence of one weapon raises the concern of "additional weapons"). The answer they then received became admissible.

## III.

We next address the evidence that the district court kept out over Becerra's objection: testimony that he had found the gun earlier in the day and was about to hand it over to his probation officer. The evidence was inadmissible, according to the court, because it would have been irrelevant and confusing.

Becerra views his own testimony more charitably. His theory is that it would have revealed that he had an "innocent" motive. For this theory to work, however, an innocent motive must be a defense to a felon-in-possession charge. The D.C. Circuit has said that it is, but other circuits have come out the other way. *Compare United States v. Mason*, 233 F.3d 619, 623 (D.C. Cir. 2000), *with United States v. Gilbert*, 430 F.3d 215, 218 (4th Cir. 2005), *United States v. Johnson*, 459 F.3d 990, 996 (9th Cir. 2006), *United States v. Baker*, 508 F.3d 1321, 1325 (10th Cir. 2007), *and United States v. Vereen*, 920 F.3d 1300, 1306 (11th Cir. 2019).

Whether to recognize an innocent-possessor defense presents a question of statutory interpretation that we review de novo. *See United States v. Williams*, 136 F.3d 547, 550 (8th Cir. 1998). We have discussed the defense in the past, *see, e.g.*, *United States v. Montgomery*, 444 F.3d 1023, 1026 (8th Cir. 2006), but we have never said one way or the other whether it exists.[3] It is time to end the suspense. There is no innocent-possessor defense because there is no statutory basis for it.

Two statutes are relevant. The first, 18 U.S.C. § 922(g), tells us what is prohibited: for a felon to "possess" a "firearm or ammunition." The second, 18

_____

[3]We have also declined to decide whether there is a "justification" defense to a felon-in-possession charge. *See, e.g.*, *United States v. Thompson*, 403 F.3d 533, 536–37 (8th Cir. 2005). Becerra does not raise a justification defense, so nothing in our opinion today resolves this lingering question.

U.S.C. § 924(a)(2), supplies the mens rea of "knowingly." So Becerra, a felon, must have knowingly possessed the gun and ammunition.

That is it. Neither statute requires Becerra to have possessed either for a nefarious purpose. Knowing possession, regardless of motive, is all that matters. *See Bryan v. United States*, 524 U.S. 184, 193 (1998) (explaining that "knowingly" requires only "proof of knowledge of the facts that constitute the offense"). Even if Becerra intended to turn over the gun (or the ammunition) to his probation officer, it is still a crime to knowingly possess it in the first place. *See, e.g.*, *Vereen*, 920 F.3d at 1306–11; *Gilbert*, 430 F.3d at 218–20.

Becerra does not identify a textual "hook" for the defense. Oral Arg. at 3:00–5:30. Rather, he says that it is an important safety valve to prevent unfair and absurd results, like penalizing a felon who just happens to find a gun in a backpack and is on the way to turn it over to the authorities. *See Mason*, 233 F.3d at 623 (presenting a similar hypothetical). The statute, however, already contains a safety valve: it penalizes only *knowing* possession. So a felon who innocently picks up a backpack with no knowledge that a gun is inside is not a felon in possession. If Congress had wanted to create another safety valve, it certainly knew how. *Johnson*, 459 F.3d at 997; *see, e.g.*, 18 U.S.C. § 931(b) (creating an affirmative defense for employer-certified use of body armor). It simply chose not to do so.

IV.

Having dealt with Becerra's challenges to his conviction, we move on to his 80-month prison sentence. He argues that his sentence is too long because he deserved an acceptance-of-responsibility reduction, is not a career offender, and had strong mitigation evidence. We disagree on every point.

To receive an acceptance-of-responsibility reduction, Becerra had to convince the district court that he "*clearly* demonstrate[d] acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a) (emphasis added). He fell short in making this

showing, in no small part because of his repeated insistence that he was only an "innocent possessor" of the gun. Whatever merit he believes this argument had, it is not a "clear demonstrat[ion]" of acceptance of responsibility. *Id.* At a minimum, we cannot say that the district court's decision to deny the reduction was "so clearly erroneous as to be without foundation." *United States v. Nguyen*, 339 F.3d 688, 690 (8th Cir. 2003).

Becerra's second challenge is foreclosed by precedent. He claims that he cannot be a career offender because his prior conviction of first-degree aggravated robbery, Minn. Stat. § 609.245 subd. 1, is not a "crime of violence," U.S.S.G. §§ 2K2.1, 4B1.2(a). We have rejected this argument before, *see United States v. Robinson*, 925 F.3d 997, 999 (8th Cir. 2019), and do so again here.

Finally, Becerra believes that his sentence is just plain unreasonable. He makes two arguments, one procedural and the other substantive. Procedurally, he believes the district court erred by failing to consider his mental-health difficulties as mitigation evidence. This argument, which we review for plain error in light of his failure to raise it below, does not get past the starting blocks because the court *did* consider the evidence and "even lowered" his sentence in response. *United States v. Kay*, 717 F.3d 659, 663 (8th Cir. 2013). The fact that it refused to go even lower is not a procedural error, much less a plain one.

Becerra's substantive-reasonableness challenge fares no better. He received a within-Guidelines-range sentence after the district court made "an individualized assessment based on the facts presented, addressing [Becerra's] proffered information in its consideration of the [18 U.S.C.] § 3553(a) factors." *United States v. Parker*, 762 F.3d 801, 812 (8th Cir. 2014) (internal quotation marks and citations omitted). He has given us no reason to second-guess this exercise of discretion. *See United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) (en banc).

## V.

We accordingly affirm the judgment of the district court.

_____