27 C.C.P.A. (Patents)

## MARTIN v. KRAFT.

### Patent Appeal No. 4309.

Court of Customs and Patent Appeals.

April 29, 1940.

Jas. V. Martin, of Washington, D. C., pro se.

Evans & McCoy, of Cleveland, Ohio (Frank S. Greene, of Cleveland, Ohio, of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office which reversed the decision of the Examiner of Interferences in an interference declared between an application (not printed in the record) filed by Martin June 23, 1936, the same purporting to be a division of an earlier application filed May 2, 1933, that ripened into patent No. 2,050,352, issued to Martin August 11, 1936, and patent No. 2,048,635, issued to Kraft July 21, 1936, based upon an application filed November 21, 1934.

Seven counts are involved. These are claims in the Kraft patent copied by Martin. In setting up the interference the Primary Examiner gave Martin the benefit of his filing date of May 2, 1933. So, he became the senior party.

The invention relates to improvements in tire treads and the subject matter is fairly illustrated by counts 1 and 3 which read:

"Count 1. A tire having a tread portion mainly comprising at least one group of flexible, continuously separated parallel ribs extending circumferentially continuously around said tread portion and projecting radially therefrom, each of said ribs being of materially greater depth than width, and being individually weak and laterally unstable, whereby under load and frictional road thrusts said portions are flexed transversely, the separation between said ribs being such that, under load and transversely flexed, said ribs may be engaged with each other."

"Count 3. A tire having a tread portion comprising axially spaced, circumferentially extending, laterally stable, stabilizing ribs, and a group of parallel, circumferentially extending, flexible finlike ribs between said stabilizing ribs, each of said flexible ribs being continuously separated from each other, said flexible ribs being of materially greater depth than width and being laterally unstable."

The record filed before us does not include all the actions taken in the Patent Office, but sufficient appears to show that the Primary Examiner at first denied the claims to Martin on the ground of lack of disclosure of their subject matter, and that, subsequently, the Primary Examiner reconsidered that action, held the claims allowable to Martin and declared the interference.

Both parties took testimony, but it appears from the decisions of the Examiner of Interferences and of the board that during the motion period Kraft moved to dissolve the interference on the ground that Martin could not make the counts. This motion does not appear in the record and all that we know of it, so far as the record is concerned, is learned from the statements in the decisions.

The Examiner of Interferences did not himself pass upon the question of Martin's

right to make the counts, nor did he examine the testimony on Martin's behalf. He held that Kraft had failed to present corroboration of any activity earlier than Martin's filing date of May 2, 1933, and upon the assumption that Martin was entitled to that date awarded him priority as the senior party.

■ Upon appeal to the board Kraft pressed the question of Martin's right to make the counts, and that tribunal, saying "We have examined the records of both parties and find that neither party has definitely proved conception or reduction to practice of the inventions in issue prior to their filing dates," proceeded to an examination of Martin's right to make the counts. It held that the subject matter of the counts was not disclosed either in the early application upon which the Martin patent was granted or in his later application in interference. The board stated that the disclosures in both were "substantially the same" and that it was "sufficient to examine the Martin patent granted on the parent application" to determine Martin's right in that respect. Since Martin did not have the divisional application placed in the record before us, we must assume that he acquiesced in the holding that it was the same as the showing of his patent.

Arguing the case before us, the brief of Martin says:

"The questions to be decided are:

"1. Whether Martin proved conception and reduction of the Invention in issue prior to May 2, 1933; and

"2. Whether Martin has the right to make the claims."

Obviously, the second question should be first considered because if the finding of the board in that respect be sustained there is no occasion to consider the first.

The brief on behalf of Kraft contains the following description of Kraft's tire tread, based upon his specification:

"The counts are directed to a tire tread construction which provides improved traction and greater frictional resistance to slippage on a road surface upon application of vehicle brakes or in passing around curves. As set forth in the Kraft patent, the effectiveness of the tread structure for the purposes mentioned is due to the provision of a relatively large number of individually weak and laterally flexible or laterally unstable ribs which, when under a load and subjected to frictional thrusts on a road surface, are readily distorted by transverse flexure and which are so disposed that the frictional resistance to slippage is greatly increased by such distortion. * * *

"The Kraft tire tread * * * is composed entirely of flexible rubber and the narrow ribs upon which the load is imposed are flexible throughout their entire height and so spaced than when under load the ribs are still capable of flexing laterally * * *. Furthermore, the ground engaging edges of the ribs are circumferentially continuous. * * *"

The board declared:

"We do not find in the Martin disclosure the relation of the depth of the ribs to their height, as stated in count 1, nor do we find a disclosure by Martin that the ribs were individually weak and laterally unstable. The function of this rib arrangement is referred to in count 1 by means of a whereby clause. Martin makes no reference to such a function. Similar functional expressions are found in all the counts, except count 3. A similar situation existed in McKee v. Noonan, Cust. & Pat. App., 86 F.2d 986.

"We find no disclosure in Martin of the relative lateral stability of the stabilizing ribs and the finlike ribs, the latter being of materially greater depth than width and being laterally unstable, as stated in count 3. Whatever similarity exists is only superficial (Wildhaber v. Zimmermann, Cust. & Pat. App., 55 F.2d 442). We cannot indulge in pure conjecture and assume that Martin's tire is made according to the counts. Brand v. Thomas, Cust. & Pat. App., 96 F.2d 301.

"In brief, the counts are quite clear as applied to the Kraft disclosure, but they are meaningless as applied to the Martin disclosure, which teaches the public nothing at all with respect to the invention in issue."

■ We have carefully examined the foregoing findings of the board in the light of Martin's contentions as expressed in his brief and in his oral argument (he having appeared pro se before us) with the result that we are not convinced of any error therein. Certainly, Martin's specification is lacking in the details, or limitations, contained in the counts to which the board directed specific attention.

As a matter of fact, Martin's chief reliance, when his arguments are carefully

analyzed, is upon the showing made by certain of his drawings. It is true that he quotes certain lines from his specification in an endeavor to fit them to features of the drawings and that he makes comparisons in the effort to show that the disclosures of the respective parties are "similar as to essentials," but he has not, in our opinion, succeeded in establishing the contentions so made.

It is proper to say that the tire treads of the respective parties, taken as a whole, differ greatly. That of Kraft has been already described. The Martin tread · is shown, in the introductory paragraphs of his patent specification, to be a wheel construction having elastic spokes with a flexible metal rim, upon the outer side of which a rubber tread is cured. This tread is equipped with radial corrugations of a type described, but the description given is insufficient to meet requirements of the counts.

The decision of the Board of Appeals is affirmed.

Affirmed.