**Donald Wayne HOWARD, Appellant,**

v.

**Orville PUNG, Commissioner of Corrections; and Frank Wood, Warden, Oak Park Heights Facility, Appellees.**

No. 88–5015.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 21, 1988.

Decided Dec. 16, 1988.

Rehearing and Rehearing En Banc Denied Feb. 14, 1989.

---

·Deborah Ellis, St. Paul, Minn., for appellant.

James B. Early, St. Paul, Minn., for appellees.

Before HEANEY and FAGG, Circuit Judges, and HENLEY, Senior Circuit Judge.

HENLEY, Senior Circuit Judge.

Donald Wayne Howard appeals from the district court's [1] denial of his petition for a writ of habeas corpus, 28 U.S.C. § 2254, in which he challenged his Minnesota state court conviction for the first degree murder of his wife, Shirleen Howard. We affirm.

The facts of this case are fully set forth in the opinion of the Supreme Court of Minnesota affirming the partial denial of post-conviction relief. *State v. Howard,* 324 N.W.2d 216 (Minn. 1982), *cert. denied,* 459 U.S. 1172, 103 S.Ct. 818, 74 L.Ed.2d 1016 (1983). Howard was convicted of hiring Bruce Webber to kill his wife. He had attempted to hire three other men to commit the killing before Webber ultimately agreed.[2] After the killing occurred, the police obtained the cooperation of one of those men, Raymond Riniker. Riniker arranged a meeting with Howard at Howard's home. Before he went, a microphone/transmitter was taped to his chest underneath his shirt so that the police could monitor the conversation between the two men. During Riniker's visit, Howard made inculpatory statements concerning the death of his wife. When Riniker left the house, the police went to arrest Howard. They knocked on the door, at first receiving no response. Howard then came

---

1. The Honorable Diana E. Murphy, United States District Judge, District of Minnesota.

2. Webber has also been convicted of killing Shirleen Howard. *State v. Webber,* 292 N.W.2d 5 (Minn.1980).

to the door, opening it and stepping back into the kitchen approximately three or four feet without speaking. The officers, who did not have an arrest warrant, entered and arrested Howard.

At the police station the police interrogated Howard. At one point he stated, "I don't think I'd better say any more—'til I have an attorney." The interrogating officer asked four more questions, then ceased the interrogation. The next morning, however, the interrogation continued. Howard asked, "Why don't I have an attorney here now?" The agent asked, "Would you rather have one present during our questioning?" Howard replied, "I guess not," and subsequently confessed to his involvement in the killing.

In his habeas petition, Howard contended that his conviction was obtained in violation of the fourth amendment on the ground that the warrantless arrest inside his home was illegal. He further contended that his confession was improperly admitted into evidence inasmuch as it was obtained after a request for counsel.

■ In *Payton v. New York*, 445 U.S. 573, 583–90, 100 S.Ct. 1371, 1378–82, 63 L.Ed.2d 639 (1980), the Supreme Court held that in the absence of exigent circumstances the fourth amendment forbids warrantless, nonconsensual entry into the home of a suspect for the purpose of making an arrest. Howard contends that the police, who admittedly did not possess a warrant, did not have his consent to enter his home. However, fourth amendment claims, including those arising under *Payton*, may not be raised in a petition for habeas corpus when the state has afforded the petitioner a full and fair opportunity to litigate those claims. *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1980); *United States v. Johnson*, 457 U.S. 537, 562 n. 20, 102 S.Ct. 2579, 2594 n. 20, 73 L.Ed.2d 202 (1982); *see Gilbert v. Parke*, 763 F.2d 821, 823–24 (6th Cir.1985) (applying *Stone* to a *Payton* claim).

■ Howard argues that he did not have a full and fair opportunity to litigate his fourth amendment claim in state court be-

cause, he contends, the state court's factual finding of consent is not supported by the evidence. While the bar in *Stone* operates even when the state court has erroneously applied fourth amendment principles, *Singleton v. Frey*, 793 F.2d 212, 213 (8th Cir.), cert. denied, 479 U.S. 934, 107 S.Ct. 410, 93 L.Ed.2d 362 (1986), a state court evidentiary hearing may be less than full and fair if it yields factual determinations not fairly supported by the record as a whole. *See Stone*, 428 U.S. at 494 & n. 36, 96 S.Ct. at 3052 & n. 36 (citing *Townsend v. Sain*, 372 U.S. 293, 313, 83 S.Ct. 745, 757, 9 L.Ed.2d 770 (1963)); *see also Cody v. Solem*, 755 F.2d 1323, 1329 (8th Cir.), cert. denied, 474 U.S. 833, 106 S.Ct. 104, 88 L.Ed.2d 84 (1985); *Hines v. Auger*, 550 F.2d 1094, 1097 (8th Cir.1977).

■ The state court found that Howard consented to the entry by the police, noting that he had given them a house key to enable them to search the premises, and that he stepped back three or four feet when he opened the door. Howard vigorously contends that he gave the police the key only for use when he was not at home, and that this did not amount to continuing consent to enter at any time. We might have some difficulty in disagreeing with this argument if the house key were the only evidence of Howard's consent. However, while we do not regard Howard's act of giving the house key to the police as dispositive, it does tend to show some willingness on his part to allow the police into his home. Moreover, while Howard's act of stepping back while opening the door perhaps should not necessarily be viewed by a finder of fact as a tacit consent to entry, such act considered along with his earlier act of having furnished a house key certainly provides substantial evidence of consent to entry. Consequently, we cannot conclude that the state court's factual determinations are not fairly supported by the record as a whole, and we hold that Howard did receive a full and fair opportunity to litigate his fourth amendment claim in state court. Further review by this

court accordingly is barred.[3]

■ Next, we turn to Howard's claim that his confession should have been excluded on the ground that it was given after he made a request for counsel. In *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), the Supreme Court held that the fifth and fourteenth amendments require that questioning must cease when a criminal suspect asks for counsel. The state and federal courts found that Howard's request for counsel was equivocal, and not a "clear request" that would trigger the protection afforded by *Edwards.* An ambiguous or equivocal request may in some instances be sufficient to require that questioning cease until counsel may be obtained. *United States v. Lame*, 716 F.2d 515, 521 & n. 2 (8th Cir.1983); *see McCree v. Housewright*, 689 F.2d 797, 801 (8th Cir.1982), *cert. denied*, 460 U.S. 1088, 103 S.Ct. 1782, 76 L.Ed.2d 352 (1983).

■ However, assuming for argument's sake that Howard was entitled to the benefit of *Edwards*, we conclude that any error in admitting his confession was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967); *Johnson v. Nix*, 763 F.2d 344, 346–47 (8th Cir.1985). First, Howard's confession is to a degree cumulative and corroborative of his taped statements to Riniker. *See Lam v. Iowa*, 860 F.2d 873 at 876 (8th Cir.1988) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986)). Although he did not expressly state that he was involved in his wife's murder, the implication that this was so is inescapable. On the tape Howard said to Riniker:

Butch, don't worry ... Listen, let me tell you what happened. This guy—I told you he had backed off. He didn't seem to want to do it. He called me up and he said, "Do you still want to do that?" and I said, "Yeah." I said O.K. I come home and that's what I found. He was planning an accident, it was sup-posed to be an accident. I was so God damn mad—and it was gruesome.

Riniker said, "Don, I didn't think you were going to go through with it." Howard replied, "You know what I had to do, didn't you? ... You promised me you wouldn't let me down, Butch, and it's done now and we can't undo it." Howard then said, "Butch, do I have to live in a nightmare now ... that you're going to crack....?"

A further sampling of the evidence at trial demonstrates the overall strength of the case against Howard. *See id.* Two men, Murphy and Riniker, testified that Howard had repeatedly tried to hire them to kill his wife. Howard told Murphy that he wanted to kill his wife rather than divorce her because he would lose his house and assets in a divorce. At one point Howard brought Murphy a gun with the serial numbers filed off. Evidence at trial further indicated that Howard contacted a man named Sorenson to commit the killing. At another point Riniker received from Howard $1,000.00 in cash, with a promise of future payments and a car, after Riniker agreed to kill Shirleen Howard. Riniker changed his mind a few days later and returned the money.

While Howard's confession did enable the police to intercept Howard's final payment to Webber, other evidence overwhelmingly connected the two. Riniker saw a man in Howard's store; Howard told Riniker the man was from Joliet, Illinois, and that Howard had given him $2,000.00 and some weapons with which to murder his wife. Webber was from Joliet, and the record indicated a number of telephone calls between Howard and Webber. Within two months of the murder, Howard gave Webber a .45 caliber Llama handgun. Shirleen was killed with a .45, either a Llama or .45 Star. The night before the murder Bruce Webber came to Winona, Minnesota, where Howard lived, and registered at a motel. We conclude that the evidence against Howard was so overwhelming as to render harmless any viola-

---

3. Our conclusion with respect to the consent question makes it unnecessary for us to consider the State's claim that the arrest was justified by exigent circumstances.

tion of his rights under *Edwards. See Harrington v. California,* 395 U.S. 250, 254, 89 S.Ct. 1726, 1728, 23 L.Ed.2d 284 (1968); *Johnson,* 763 F.2d at 347.

Finding no reversible legal or factual error on the part of the district court, we affirm.