**Benny Lee WILLETT, Appellant,**

v.

**A.L. LOCKHART, Director, Arkansas Department of Correction, Appellee.**

**No. 93–2932.**

United States Court of Appeals, Eighth Circuit.

Submitted May 24, 1994.

Decided Oct. 12, 1994.

---

D. Franklin Arey, III, Conway, AR, argued, for appellant.

Olan W. Reeves, Asst. Atty. Gen., Little Rock, AR, argued, for appellee.

Before RICHARD S. ARNOLD, Chief Judge, McMILLIAN, FAGG, BOWMAN, WOLLMAN, MAGILL, BEAM, LOKEN, HANSEN, MORRIS SHEPPARD ARNOLD, Circuit Judges, en banc.

BOWMAN, Circuit Judge.

Benny Lee Willett appeals the order of the District Court[1] dismissing his petition for writ of habeas corpus. We affirm.

Willett was convicted in Arkansas state court of possession of a controlled substance with intent to deliver. The jury found Willett to be a habitual offender and he was sentenced to life in prison. In his direct appeal, Willett challenged the trial court's finding that officers had probable cause to stop his vehicle, and thus legally to conduct a warrantless search of the vehicle and to seize the gun, drug paraphernalia, marijuana, and cocaine found therein. Willett argued that the stop and the ensuing search and seizure violated his Fourth Amendment rights (made applicable to the states via the Fourteenth Amendment), and that his motion to exclude the seized materials from evidence at trial should have been granted. The Arkansas Supreme Court disagreed and affirmed the conviction. *Willett v. State*, 298 Ark. 588, 769 S.W.2d 744 (1989) (one justice dissenting).

Pursuant to 28 U.S.C. § 2254, Willett filed a petition for a writ of habeas corpus in the District Court, claiming that the state courts' conclusions that his Fourth Amendment rights had not been violated were not fairly supported by the record as a whole. The District Court adopted the findings and recommendations of the Magistrate Judge[2] and dismissed the petition. The court determined that it would not review Willett's claims, as he had been afforded "an opportunity for full and fair litigation" of those claims in state court, according to the rule set forth by the Supreme Court in *Stone v.*

---

1. The Honorable Stephen M. Reasoner, Chief Judge, United States District Court for the Eastern District of Arkansas.

2. The Honorable Jerry W. Cavaneau, United States Magistrate Judge for the Eastern District of Arkansas.

*Powell,* 428 U.S. 465, 482, 494, 96 S.Ct. 3037, 3046, 3052, 49 L.Ed.2d 1067 (1976). Willett appeals.

After hearing oral argument on the appeal, the panel of three judges initially assigned to hear the case concluded that previous panel decisions from the Eighth Circuit applying the teachings of *Stone* appeared to be in conflict. The panel thus referred the case to the Court for hearing en banc, and oral argument has been heard by the full Court. With this opinion, we seek to resolve any conflict within the Circuit concerning the application of *Stone* and to give guidance to our district courts for their determination of future *Stone* issues.

*Stone* itself provides a historical perspective of the federal writ of habeas corpus in the United States, a review of which provides the backdrop for our opinion. *See id.* at 474–81, 96 S.Ct. at 3042–46.

In Congress's first concession of jurisdiction to the federal courts in 1789, authority was given to grant the writ of habeas corpus to prisoners illegally held in the custody of the United States. In 1867, Congress extended that authority to permit the granting of the writ to state prisoners who were being held in violation of the Constitution or laws of the United States. It was not until 1915 that habeas jurisdiction began to take on the look that we know today, when the Supreme Court broadened the range of habeas jurisdiction beyond consideration of the jurisdiction of the sentencing court. In *Frank v. Mangum,* 237 U.S. 309, 35 S.Ct. 582, 59 L.Ed. 969 (1915), the prisoner challenged his murder trial as having been dominated by a hostile mob. The Court recognized that execution of a sentence that resulted from mob-dominated proceedings, such "that the jury is intimidated and the trial judge yields," would violate the accused's due process rights if the state "suppl[ied] no corrective process." *Id.* at 335, 35 S.Ct. at 590. The Supreme Court found no "reason to suppose that [the state supreme court] did not fairly and justly perform its duty" in reviewing the prisoner's claim, *id.* at 333, 35 S.Ct. at 589, and "affirmed the denial of relief because Frank's federal claims had been considered by a competent and unbiased state tribunal." *Stone,* 428 U.S. at 476, 96 S.Ct. at 3043.

A sea change in the scope of the writ was signaled by the Court in *Brown v. Allen,* 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953). The constitutional issues in that case concerned racial discrimination in the selection of grand jurors and the admission of allegedly coerced confessions, and the Court asked, "Have petitioners received hearings consonant with standards accepted by this Nation as adequate to justify their convictions?" *Id.* at 465, 73 S.Ct. at 412. "Despite the apparent adequacy of the state corrective process, the Court reviewed the denial of the writ of habeas corpus and held that Brown was entitled to a full reconsideration of these constitutional claims, including, if appropriate, a hearing in the Federal District Court." *Stone,* 428 U.S. at 477, 96 S.Ct. at 3044.

In *Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), *effectively overruled by Coleman v. Thompson,* 501 U.S. 722, 750–51, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991), the Court permitted consideration of a constitutional claim upon a petition for a federal writ of habeas corpus even though the claim was not raised by the prisoner in state proceedings. By thus expanding the scope of the writ, the Court had "narrowly restrict[ed] the circumstances in which a federal court may refuse to consider the merits of federal constitutional claims." *Stone,* 428 U.S. at 478, 96 S.Ct. at 3044.

Against the historical backdrop sketched above, and with thirteen years of experience with the regime of *Fay v. Noia* under its belt, the Court in *Stone v. Powell* considered whether searches and seizures allegedly illegal under the Fourth Amendment, ordinarily rectified in criminal cases by the exclusionary rule of *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), should continue to receive the same review as other constitutional violations alleged by state prisoners in federal habeas cases. The Court, using the language that has resulted in the lower federal courts' applying a degree of habeas review that ranges from imperceptible to quite broad, held "that where the State has provided *an opportunity for full and fair litigation of a Fourth Amendment claim,* the Constitu-

tion does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone,* 428 U.S. at 481–82, 494, 96 S.Ct. at 3046, 3052 (emphasis added).

The issue before us is the extent to which federal habeas courts are to review the proceedings in state court—if we are to review them at all—to determine whether the state afforded the petitioner an opportunity for full and fair litigation. In *Howard v. Pung,* 862 F.2d 1348 (8th Cir.1988), *cert. denied,* 492 U.S. 920, 109 S.Ct. 3247, 106 L.Ed.2d 593 (1989), Howard argued that his petition was not *Stone*-barred because a factual finding of the state court was not supported by the evidence. The panel opinion noted that "the bar in *Stone* operates even when the state court has erroneously applied fourth amendment principles," but then went on to conclude that "a state court evidentiary hearing may be less than full and fair if it yields factual determinations not fairly supported by the record as a whole." *Id.* at 1350. That language obviously requires a de novo review of the record of the state court proceedings to determine if the factual findings are "fairly supported," but then grants deference—absolute deference—to the state's application of federal constitutional law to those facts. Further, the *Howard* Court apparently considered whether the actual proceedings in state court were full and fair, rather than whether the petitioner was provided an *opportunity* for full and fair litigation of his Fourth Amendment claims. More recently, other Eighth Circuit panels have taken a less inclusive approach to the review of potentially *Stone*-barred petitions. *See Cortis v. Kenney,* 995 F.2d 838, 841 (8th Cir.1993); *Robinson v. Clarke,* 939 F.2d 573, 575 (8th Cir. 1991) (per curiam). These later cases seem to assume that *Stone* forecloses the review of the record that *Howard* called for.

Willett argues that the comprehensive *Howard* standard of review is required by

footnote 36 in *Stone,* and in fact the *Howard* decision cites that footnote at the place in the opinion where it mandates a thorough review of the state court record. *Howard,* 862 F.2d at 1350 (citing *Stone,* 428 U.S. at 494 & n. 36, 96 S.Ct. at 3052 & n. 36). The *Stone* footnote is a "*Cf.*" citation [3] to *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), *overruled on other grounds by Keeney v. Tamayo–Reyes,* — U.S. —, —, 112 S.Ct. 1715, 1717, 118 L.Ed.2d 318 (1992). In general, *Townsend* (the citation does not include a pinpoint page reference) concerned a petitioner who claimed his constitutional rights were violated because the trial court that entered a guilty verdict against him on a murder charge received into evidence his confession, purportedly obtained while he was under the influence of a "truth serum" administered by a police physician. In deciding Townsend's case, the Supreme Court held that if, among other failings, "the state factual determination is not fairly supported by the record as a whole," then a habeas petitioner is entitled to a plenary evidentiary hearing on his constitutional claims in federal court because he has been denied a full and fair hearing in state court. *Townsend,* 372 U.S. at 313, 83 S.Ct. at 757. (The Court did not mention the *opportunity* for such a hearing, because it was irrelevant under federal habeas corpus jurisprudence at the time). We conclude that, as a consequence of *Stone*'s footnote 36, many federal courts, including at times this one, have relied upon the *Townsend* factors when considering a *Stone* bar, and therefore have restricted the scope of the bar in error. *See* cases cited *infra* at 1270; *Howard,* 862 F.2d at 1350; *Hines v. Auger,* 550 F.2d 1094, 1097 (8th Cir.1977).

We think it clear that, had the Supreme Court intended to incorporate the *Townsend* test into its analysis in *Stone,* it would not have been so subtle as to do so by reference to the case in a footnote, with a *cf.* citation, and without providing a citation to the page

---

**3.** The current Bluebook explains the "*Cf.*" signal as follows:
"Cited authority supports a proposition different from the main proposition but sufficiently analogous to lend support." The Bluebook: A Uniform System of Citation 1.2(b) at 23 (Editors of

Columbia Law Review *et al.* eds., 15th ed. 1991) (emphasis omitted). This current explanation is substantially similar to those that appear in earlier editions of the Bluebook in print at the time *Stone v. Powell* was written.

of the *Townsend* opinion where the test appears. The footnote is appended to this phrase: "In sum, we conclude that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim...." *Stone,* 428 U.S. at 494, 96 S.Ct. at 3052. The *cf.* signal tells us that *Townsend* supports a *different* proposition from the one just quoted. *See supra* at 1268 n. 3. The key difference is that the petitioner in *Townsend* was presenting a due process claim under the Fourteenth Amendment, not a Fourth Amendment claim as in *Stone.* By its very terms, *Stone* changed the federal habeas rules as they applied to alleged Fourth Amendment violations, requiring only that the petitioner have been afforded in the state courts "an *opportunity* for full and fair litigation," *Stone,* 428 U.S. at 482, 494, 96 S.Ct. at 3046, 3052 (emphasis added), not that this opportunity must produce either factual findings or legal conclusions that would survive ordinary federal habeas review.

The change wrought by *Stone* resulted from the Supreme Court's conclusion that the exclusionary rule "is not a personal constitutional right," *id.* at 486, 96 S.Ct. at 3048, but "a judicially created means of effectuating the rights secured by the Fourth Amendment," *id.* at 482, 96 S.Ct. at 3047. The rule was designed "to discourage law enforcement officials from violating the Fourth Amendment by removing the incentive to disregard it." *Id.* at 492, 96 S.Ct. at 3051. As a complement to that deterrence, it was hoped the rule would "encourage those who formulate law enforcement policies, and the officers who implement them, to incorporate Fourth Amendment ideals into their value system." *Id.* The Court also recognized that the rule has its costs, including the exclusion of evidence that "is typically reliable and often the most probative information bearing on the guilt or innocence of the defendant.... Application of the rule thus deflects the truthfinding process and often frees the guilty." *Id.* at 490, 96 S.Ct. at 3050. Moreover, "if applied indiscriminately [the rule] may well have the ... effect of generating disrespect for the law and administration of justice." *Id.* at 491, 96 S.Ct. at 3051. The Court concluded that any deterrent effect that

would result from allowing collateral review of search and seizure claims, and possible reversal of a conviction years after the fact, would be minimal at best. "The view that the deterrence of Fourth Amendment violations would be furthered rests on the dubious assumption that law enforcement authorities would fear that federal habeas review might reveal flaws in a search or seizure that went undetected at trial and on appeal." *Id.* at 493, 96 S.Ct. at 3052. Even if officers were sufficiently cowed by this "dubious assumption" so as to be deterred from committing acts in violation of the Fourth Amendment, the Court reasoned, any deterrent effect would be so marginal as to "be outweighed by the acknowledged costs to other values vital to a rational system of criminal justice." *Id.* at 494, 96 S.Ct. at 3052.

The Supreme Court has since reiterated that it held as it did in *Stone* because of the special nature of Fourth Amendment protections in criminal cases and the consequences of the remedial exclusionary rule. *Reed v. Farley,* —— U.S. ——, —— —— ——, 114 S.Ct. 2291, 2296–97, 129 L.Ed.2d 277 (1994); *see also id.* at —— n. 5, 114 S.Ct. at 2304 n. 5 (Blackmun, J., dissenting). The *Stone* Court concerned itself only with claims made under the Fourth Amendment, excepting such claims from the full review that typically was afforded at that time to all claims of constitutional error raised in federal habeas cases. *See Stone,* 428 U.S. at 495 n. 37, 96 S.Ct. at 3052–53 n. 37 ("Our decision today is *not* concerned with the scope of the habeas corpus statute as authority for litigating constitutional claims generally."). Where the federal habeas petitioner alleges violations of constitutional rights other than those under the Fourth Amendment, the Court has declined to extend the *Stone* rule. *See Withrow v. Williams,* —— U.S. ——, —— —— ——, 113 S.Ct. 1745, 1750–55, 123 L.Ed.2d 407 (1993) (statements obtained in violation of petitioner's *Miranda* rights); *Kimmelman v. Morrison,* 477 U.S. 365, 375–77, 106 S.Ct. 2574, 2582–84, 91 L.Ed.2d 305 (1986) (ineffective assistance of counsel for failure to file timely suppression motion); *Rose v. Mitchell,* 443 U.S. 545, 559–64, 99 S.Ct. 2993, 3001–04, 61 L.Ed.2d 739 (1979) (equal protection claim

for racial discrimination in selection of grand jury foreman); *Jackson v. Virginia,* 443 U.S. 307, 321–24, 99 S.Ct. 2781, 2790–92, 61 L.Ed.2d 560 (1979) (due process claim of insufficient evidence).

We conclude that under *Stone* a federal habeas court considering a state prisoner's claim alleging a Fourth Amendment violation should abstain from reviewing the state court records to determine if the state's factual findings are fairly supported by the record as a whole, and we overrule *Howard v. Pung* to the extent that it requires otherwise. Rather, the proper inquiry is whether "the State has provided an opportunity for full and fair litigation" of the claim. *Stone,* 428 U.S. at 482, 494, 96 S.Ct. at 3046, 3052.

The Supreme Court has yet to elaborate upon the meaning of "an opportunity for full and fair litigation." We believe, however, that its meaning is not obscure and can be appropriately discerned. The existing post-*Stone* case law is instructive, and we turn to it for guidance, exploring just what it means for a state prisoner to have been afforded an opportunity in state court for full and fair litigation of his Fourth Amendment claim.

First, there is a general consensus among the courts of appeals that, as *Howard* notes, an error of law in the state court's decision does not by itself provide grounds for habeas relief in a Fourth Amendment case. *See, e.g., Siripongs v. Calderon,* 35 F.3d 1308, 1321 (9th Cir.1994) (noting that petitioner's "argument goes not to the fullness and fairness of his opportunity to litigate the claim, but to the correctness of the state court resolution, an issue which *Stone v. Powell* makes irrelevant"); *Deputy v. Taylor,* 19 F.3d 1485, 1491 (3d Cir.) ("Even otherwise potentially meritorious Fourth Amendment claims are barred on habeas when the petitioner had a full and fair opportunity to litigate them."), *cert. denied,* —— U.S. ——, 114 S.Ct. 2730, 129 L.Ed.2d 853 (1994); *Capellan v. Riley,* 975 F.2d 67, 71 (2d Cir.1992) ("a petitioner cannot gain federal review of a fourth amendment claim simply because the federal court may have reached a different result"); *Brecht v. Abrahamson,* 944 F.2d 1363, 1371 (7th Cir.1991) ("Error in application [of the exclusionary rule] does not sup-

port a writ of habeas corpus."), *aff'd,* —— U.S. ——, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993); *Palmigiano v. Houle,* 618 F.2d 877, 882 (1st Cir.) ("An error in the state court's decision is not a denial of full and fair litigation."), *cert. denied,* 449 U.S. 901, 101 S.Ct. 272, 66 L.Ed.2d 132 (1980).

Numerous federal courts of appeals, however, have read *Stone* as contemplating federal habeas review of the state courts' factual findings. This error usually results when these federal courts (often citing the *Townsend* factors) consider whether the petitioner *in fact* had full and fair litigation of his Fourth Amendment claim in state court, rather than whether he had the *opportunity* for full and fair litigation. *See, e.g., Andrews v. Collins,* 21 F.3d 612, 631 (5th Cir.1994) (finding petitioner's claim *Stone*-barred "[a]fter reviewing the record" and finding "that the material facts were adequately developed in state court"); *Deputy,* 19 F.3d at 1491 (citing *Townsend* as "defining requirements of full and fair hearing"); *Weber v. Murphy,* 15 F.3d 691, 694 (7th Cir.) (noting federal habeas review is not *Stone*-barred if state court's "factual findings are not fairly supported by the record"), *cert. denied,* —— U.S. ——, 114 S.Ct. 1865, 128 L.Ed.2d 486 (1994); *Miranda v. Cooper,* 967 F.2d 392, 401 (10th Cir.) (concluding petition was *Stone*-barred after having "carefully examined the record relative to the [Fourth Amendment] challenge"), *cert. denied,* —— U.S. ——, 113 S.Ct. 347, 121 L.Ed.2d 262 (1992); *Terrovona v. Kincheloe,* 912 F.2d 1176, 1178 (9th Cir.1990) (recognizing that the Ninth Circuit had applied the *Townsend* test, along with other factors, to determine whether there was full and fair consideration under *Stone* ), *cert. denied,* 499 U.S. 979, 111 S.Ct. 1631, 113 L.Ed.2d 726 (1991); *Tukes v. Dugger,* 911 F.2d 508, 514, 516 n. 12 (11th Cir.1990) (noting that claim is not *Stone*-barred if trial court's findings are "unclear and the state appellate court writes no opinion," and that in such a case (citing *Townsend,* among other cases) the district court should hold an evidentiary hearing), *cert. denied,* —— U.S. ——, 112 S.Ct. 273, 116 L.Ed.2d 225 (1991); *Jennings v. Rees,* 800 F.2d 72, 76 (6th Cir.

1986) (per curiam) (reading the record of the suppression hearing conducted by the trial court "in light of *Stone v. Powell*"); *Palmigiano,* 618 F.2d at 882 (concluding that *Townsend* factors "can be used as a guide in determining whether there has been full and fair state litigation of fourth amendment claims"); *Gamble v. Oklahoma,* 583 F.2d 1161, 1165 (10th Cir.1978) (" 'Opportunity for full and fair consideration' ... also includes the full and fair evidentiary hearing contemplated by *Townsend.*") (footnote omitted).

As is evident from reading cases from our Court and from our sister circuits, application of the *Stone* rule runs the gamut—from looking at "opportunity" in the abstract to conducting a detailed review of the state court record to, in some instances, holding a plenary evidentiary hearing in district court. We think that the *Stone* opinion, which clearly limits the scope of federal habeas review as to Fourth Amendment claims, was intended to short-circuit the district court's review of the record in such cases as well as to avoid the court's conducting anew an evidentiary hearing on the claim. *See Woolery v. Arave,* 8 F.3d 1325, 1328 (9th Cir.1993) ("We read *Stone* as a categorical limitation on the applicability of fourth amendment exclusionary rules in habeas corpus proceedings."), *cert. denied,* —— U.S. ——, 114 S.Ct. 1623, 128 L.Ed.2d 348 (1994); *Brecht,* 944 F.2d at 1372 ("*Stone* effectively eliminated collateral review of claims under the fourth amendment."). Nevertheless, the Supreme Court did not preclude federal habeas review of Fourth Amendment claims in all circumstances. Rather, the *Stone* bar applies where the state courts have afforded the petitioner an opportunity for full and fair consideration of his claims.

Several of our sister circuits have devised multi-part tests to determine whether a federal habeas petitioner has had an opportunity for full and fair litigation of his Fourth Amendment claims in state court. For example, the Seventh Circuit has held that the appropriate opportunity has been afforded the petitioner if:

(1) he has "clearly informed the state court of the factual basis for that claim and has argued that those facts constitute a

violation of ... [his] fourth amendment rights and (2) the state court has carefully and thoroughly analyzed the facts and [ (3) ] applied the proper constitutional case law to the facts."

*Weber,* 15 F.3d at 694 (quoting *Pierson v. O'Leary,* 959 F.2d 1385, 1391 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 168, 121 L.Ed.2d 115 (1992)) (alteration in *Weber*). We reject this three-part test as a subversion of the *Stone* rule. Instead, we agree with those courts that have taken the view that petitioner's "opportunity" for full and fair litigation should not depend upon whether he has taken advantage of the process available—that is, whether he has "clearly informed" the state court of the facts supporting his claim and "has argued" that his constitutional rights have been violated. *See, e.g., Miranda,* 967 F.2d at 401; *Caver v. Alabama,* 577 F.2d 1188, 1192 (5th Cir.1978); *Gates v. Henderson,* 568 F.2d 830, 839 (2d Cir.1977) (en banc), *cert. denied,* 434 U.S. 1038, 98 S.Ct. 775, 54 L.Ed.2d 787 (1978). Moreover, determining whether the state court "carefully and thoroughly analyzed the facts" and then "applied the proper constitutional law" would require the very review of the state court record that the *Stone* rule is intended to circumvent.

The Second Circuit on occasion has applied a two-part test, the substance of which also has found favor in at least two other circuits. We quote the Second Circuit's formulation:

[R]eview of fourth amendment claims in habeas petitions [is] undertaken ...: (a) if the state has provided *no corrective procedures at all* to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an *unconscionable breakdown in the underlying process.*

*Capellan,* 975 F.2d at 70 (emphasis added); *accord United States ex rel. Bostick v. Peters,* 3 F.3d 1023, 1027 (7th Cir.1993) ("whether the state procedural mechanism, in the abstract, presents the opportunity to raise a Fourth Amendment claim ... [and] whether the presentation of the claim in question was in fact frustrated by a failure of

that mechanism"); *Riley v. Gray,* 674 F.2d 522, 526 (6th Cir.) (same), *cert. denied,* 459 U.S. 948, 103 S.Ct. 266, 74 L.Ed.2d 207 (1982); *see also United States v. Scarborough,* 777 F.2d 175, 182 (4th Cir.1985) (noting that, on collateral review, Fourth Circuit has held that the opportunity for full and fair litigation of Fourth Amendment claim "is met when state procedures provide a *meaningful* vehicle for a prisoner to raise a fourth amendment claim") (emphasis added). We think the *Capellan* test, properly applied, encompasses the appropriate federal habeas review of state prisoners' Fourth Amendment claims under *Stone.*

Application of the first part of the test is simple enough—either the state has a system available for raising Fourth Amendment claims or it does not (and we are unaware of any state that does not). Further, with a state court mechanism for consideration of such claims in place, we think that it will be the rare case where there is a failure of that mechanism that reaches constitutional dimensions.[4] Some courts, however, have applied the second part to broaden the scope of collateral review set forth in the *Stone* rule beyond its limits. For example, the Seventh Circuit in *Bostick,* after stating the rule, went on to explain that there was a failure of the state-court mechanism if the state court failed parts (2) and (3) of the three-part test in *Weber,* discussed above. But if the *Stone* rule permitted this sort of inquiry into state court findings of fact and conclusions of law on a federal petition for writ of habeas corpus, then it seems to us *Stone* might just as well never have been written, for such an application would result at best in only marginal limitation upon habeas review of Fourth Amendment claims. Moreover, such broad

federal habeas review of the merits of a state prisoner's Fourth Amendment claims is inconsistent with *Stone*'s teaching that state courts are as capable of fairly and competently adjudicating Fourth Amendment claims as are federal courts. *Stone,* 428 U.S. at 494 n. 35, 96 S.Ct. at 3052 n. 35 ("[W]e are unwilling to assume that there now exists a general lack of appropriate sensitivity to constitutional rights in the trial and appellate courts of the several States."). A determination of whether there has been a breakdown in the state's procedure does not require a probing review of the state court record, either of the factual findings pertaining to the petitioner's search-and-seizure claims or of the application of Fourth Amendment principles to those facts.

As *Stone* suggests, a breakdown in the mechanism can occur in either the trial court or the state appellate court.[5] *See id.* at 489, 96 S.Ct. at 3050 ("The question is whether state prisoners—who have been afforded the opportunity for full and fair consideration of their reliance upon the exclusionary rule ... by the state courts at trial *and on direct review*—may invoke their claim again on federal habeas corpus review.") (emphasis added). It should be remembered, however, that the two-part test we adopt today does not require any more searching review of the state appellate court record than it does of the trial court record. A state appellate court's summary affirmance, a short opinion, or a written opinion that fails to discuss one or more of the issues raised is not by itself indicative of a breakdown in the state's review mechanism. *See, e.g., Capellan,* 975 F.2d at 72 (refusing to conclude that state appellate court's summary affirmance, issued instead of a written opinion, was indicative of

4. Without expressing either approval or disapproval, we note that in *Riley v. Gray,* 674 F.2d 522 (6th Cir.), *cert. denied,* 459 U.S. 948, 103 S.Ct. 266, 74 L.Ed.2d 207 (1982), the court found that there had been a breakdown in the state's mechanism because the state appellate court erroneously found that petitioner lacked standing to raise a Fourth Amendment claim but did not remand to the trial court to give the petitioner an opportunity to argue the issue. The Sixth Circuit thought such a remand should have been ordered because standing had not been an issue in the trial court and therefore had not been briefed or argued on appeal—through no fault of the

petitioner. The Sixth Circuit held that the state appellate court's actions constituted a breakdown in the state mechanism provided for review of Fourth Amendment claims. The district court having declined to apply the *Stone* bar to the prisoner's claim, the court of appeals reviewed the decision the lower court had reached on the merits of the claim.

5. State appellate review also affords the defendant the opportunity for federal review via a petition for a writ of certiorari to the Supreme Court.

a breakdown in the process); *Riley,* 674 F.2d at 525 (*"Stone* did not require that the state court rule on the merits of each claim"); *contra Tukes,* 911 F.2d at 514 ("where the trial court's findings which are essential to the disposition of the fourth amendment claim are unclear and the state appellate court writes no opinion, we deem the petitioner's fourth amendment claim not to have been fully considered within the meaning of *Stone v. Powell* "); *Agee v. White,* 809 F.2d 1487, 1490 (11th Cir.1987) (finding that petitioner did not receive full and fair consideration of his Fourth Amendment claim because state appellate court "ignored this contention in its opinion").

In summary, then, we adopt the two-part test set forth in *Capellan,* 975 F.2d at 70, for determining whether a habeas petitioner has had an opportunity for full and fair litigation of his Fourth Amendment claims in state court. Under this test, a Fourth Amendment claim is *Stone*-barred, and thus unreviewable by a federal habeas court, unless either the state provided no procedure by which the prisoner could raise his Fourth Amendment claim, or the prisoner was foreclosed from using that procedure because of an unconscionable breakdown in the system. We believe that our approach flows naturally from the language of *Stone,* which we have emphasized in this opinion, and from *Stone* 's rationale. As *Stone* makes clear, Fourth Amendment claims asserted by state prisoners in federal habeas petitions are to be treated differently from other constitutional claims because of the nature and purpose of the exclusionary rule and the incremental value gained from its implementation in the federal habeas situation compared with the costs it imposes upon the administration of justice. The federal courts on habeas review of such claims are not to consider whether full and fair litigation of the claims *in fact* occurred in the state courts, but only whether the state provided an *opportunity for such* litigation.

The District Court correctly ruled that federal habeas review of Willett's Fourth Amendment claims is barred by *Stone.* Accordingly, the judgment of that court is affirmed.

RICHARD S. ARNOLD, Chief Judge, with whom McMILLIAN, Circuit Judge, joins, concurring in the judgment.

I agree with the judgment of the Court in this case and with much of its scholarly opinion. I write separately to express what is primarily a difference of emphasis.

It is certainly true that under *Stone* we should focus on the procedure afforded by the state courts in their consideration of Fourth Amendment claims. The Court rightly emphasizes that it is the "opportunity for full and fair litigation, *Stone,* 428 U.S. at 482, 494 [96 S.Ct. at 3046, 3052]," *ante* at 1270, that is important. We may not review the results reached by the state courts on such issues, either on questions of law or on those of fact. To this extent I agree completely that the language of *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), about findings fairly supported by the state-court record as a whole, is inapposite in the *Stone* context. This language refers to the results reached by state courts on a given factual record. We should not concern ourselves with that issue.

If, on the other hand, a state formally offers an opportunity to a litigant to urge a Fourth Amendment claim, and the litigant avails himself of the opportunity by offering evidence and argument in support of his claim, it seems to me that the state court may in fact deny him a full and fair hearing if it, for example, excludes important relevant evidence on the issue of probable cause. A petitioner in such a case receives an opportunity for a full and fair hearing, but the opportunity is illusory. Maybe this would be an example of what the Court refers to as an unconscionable breakdown in the state-court mechanism for considering Fourth Amendment claims. Because I'm not sure of the Court's precise meaning on this point, I content myself with concurring in the result, there being no reason to believe that the Arkansas state courts in this case denied Willett either an opportunity for a full and fair hearing or such a hearing in fact.